UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                 CRIM. NO. SA-23-CR-117 FB

DEMETRIO RAMIREZ,

     Defendant.

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States of America, by and through Assistant United States Attorney Tracy Thompson, and submits this sentencing memorandum for the Court's consideration in determining an appropriate sentence for the defendant, Demetrio Ramirez. For the reasons stated below, the Government recommends a sentence of 50 years, which is the advisory Guidelines range, to be followed by a lifetime term of supervised release.

### Introduction

On the 20th day of February 2024, the defendant pleaded guilty, without a plea agreement, to the charges contained in the Indictment, Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a) and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2). The PSR correctly calculates the criminal history category of I and a Guidelines sentencing range of imprisonment for life, restricted by the statutory maximum sentence of 600 months. PSR ¶ 53. The Sentencing Guidelines also recommend imposition of the maximum term of supervised release, lifetime, for the defendant who has committed a sex offense. See U.S.S.G. § 5D1.2(b)1.

Considering the Guidelines, Guidelines Policy Statements, and 18 U.S.C. § 3553(a)

1

factors, the government requests the Court impose a term of 50 years imprisonment (30 years on Count One and 20 years on Count Two), followed by a lifetime term of supervised release. Because the defendant engaged in a repeated pattern of sexual abuse and exploitation 50 years imprisonment is reasonable and is not greater than necessary.

Defendant Ramirez sexually assaulted the victim repeatedly for years.   In addition to normalizing sexual abuse for the victim, he further exploited this young child by distributing the images and videos he created of her abuse to other individuals who have a sexual interest in children.   Defendant Ramirez did this knowingly, willfully, and repeatedly for years.   While he says he recognizes the harm he inflicted upon this child and wants treatment, he didn't stop this behavior until the FBI arrested him and forced him to stop by putting him in jail.   There is no indication he would have ever stopped abusing and exploiting his poor little girl.

Also important is his motivation.   Defendant Ramirez acts as if he is the victim because of the romantic choices made by his ex-wife.   However, his ex-wife reported that it was the defendant that cheated on her during the marriage, which the woman with whom he was having an extra-marital affair confirmed.   It was after the defendant cheated on his wife, that she suggested the open marriage concept for them, to which the defendant agreed.   To assert that he is some sort of victim in this situation, and his marriage not playing out as he wanted caused him to repeatedly sexually assault and exploit this innocent child is ridiculous and shows he clearly does not take responsibility for his criminal behavior.

Operation Rescue Me is a joint operation run by the National Center for Missing and Exploited Children (NCMEC) and the FBI to identify and rescue the victims of child sex exploitation that are depicted in the seemingly infinite child sex abuse images and videos that are circulating through the Internet.   Operation Rescue Me utilizes specialized investigative

techniques, to include facial recognition to assist with this identification process.

On February 15, 2023, FBI San Antonio received information from the FBIHQ Child Exploitation Unit that Operation Rescue Me had identified 33-year-old San Antonio, Texas, resident Demetrio Ramirez, as potentially an individual that produced approximately 20 videos depicting the sexual assault of an approximately 4-year-old female over a period of a few years, first beginning in 2018.   FBIHQ provided FBI San Antonio with the 20 videos that had been provided to NCMEC by various law enforcement officers since 2018 and which had been distributed using numerous applications and platforms such as Flickr, YouTube, Kik, Telegram and others.   The videos depicted defendant Ramirez forcing the same prepubescent minor female to perform oral sex on him.

FBI San Antonio immediately established surveillance on all residences associated with Demetrio Ramirez, as well as his place of employment.   The FBI located the defendant at a restaurant and approached him, identified themselves, and requested to speak with him. Defendant Ramirez agreed and was escorted to an FBI vehicle where Agent Rodriguez and Agent Baker spoke with him.   The defendant was advised of his rights against self-incrimination, which he indicated he understood and waived. He was then told he had been identified as the individual that had sexually assaulted the child victim and produced videos of these assaults.   The defendant did not immediately admit his criminal conduct, but asked to review the videos to verify that the FBI was not bluffing. After confirming the FBI possessed the videos, he made of himself sexually assaulting the minor victim, the defendant advised he had forced CV to perform oral sex on him on multiple occasions over a period of two days and that he had used his Samsung cellular telephone to produce videos of these sex abuse acts.   Ramirez subsequently distributed these videos via Internet based applications to see what type of response

he would receive.   Ramirez advised he chose this particular child victim to sexually exploit because he was angry at her biological father and wanted to punish him, even though her father wasn't made aware Ramirez was assaulting his daughter until after he was arrested by the FBI.

After being confronted by FBI SA Baker that the videos appear to depict CV over a lengthy period as the backgrounds in the videos change and CV appears to have aged in some of the videos, the defendant admitted the assaults occurred over an extended period beginning in approximately 2018.   Defendant Ramirez advised that every time he sexually assaulted CV, he produced a video of that assault.   The FBI reviewed each of the 20 videos that FBIHQ supplied with Ramirez, and he advised that he is the adult male receiving oral sex from CV in each of the videos. Defendant Ramirez again advised the agents he used his Samsung cellular telephone to produce each of those videos.   Samsung cellular telephones are not manufactured in the state of Texas and thus had to be transported in interstate commerce to arrive in the Western District of Texas.   Ramirez advised that these videos were produced in two separate mobile homes that he shared with CV, CV's mother and other prepubescent children fathered by Ramirez and other males.   Ramirez explained that the sexual abuse of the child took place at two different homes, both located within the Western District of Texas.

Ramirez advised the extent of the sexual abuse of CV was limited to CV performing oral sex on Ramirez and Ramirez performing oral sex on CV on one occasion. Ramirez actively traded the child pornography he produced of CV through multiple social media applications and file sharing platforms, to include Telegram, Flickr, Wicker, and Mega.   In exchange for distributing the child pornography files of CV, the defendant received child pornography files from the recipients.   Ramirez would then trade that child pornography for even more child pornography files.

4

CV, the child victim, was interviewed and disclosed she was sexually assaulted by the defendant on what she described as a near daily basis for a while. CV also detailed how defendant Ramirez used pornography depicting other individuals engaged in sexual acts to groom her.   On one occasion, Ramirez played a video of two individuals engaged in sexual intercourse.   Ramirez advised CV that the two individuals depicted in the video were Ramirez and his sister, whom CV knows.   CV also disclosed an incident when the defendant played a video of two individuals engaging in anal sex and instructed CV to lay nude on the ground. Defendant Ramirez then placed a pillow under CV's buttocks and attempted to insert his penis into her anus. CV explained that this was painful, and that Ramirez could not fully insert his penis into her anus.

The defendant used this little girl to satisfy his own sexual needs, but to also satisfy some weird internal desire to harm her parents by hurting her.   He then exploited her by sharing those harmful moments of her young life with others to use for their sexual gratification.   Such actions not only normalize the sexual abuse of children, but they encourage others to sexually abuse and exploit children so that more children are being victimized.

CV loved and trusted the defendant. She didn't even know the sexual assaults were not part of a normal parent/child relationship.   The defendant was one of the people entrusted to protect the child from the evils in the world and instead of protecting her, the defendant is the one that has caused lifelong harm to her.

This defendant's lengthy abuse and exploitation of CV merits a 50-year term of imprisonment followed by a lifetime term of supervised release, and is reasonable considering the Guidelines, Guidelines Policy Statements, and the § 3553(a) factors.[1]

---

1 Section 3553(a) requires the Court to consider the following factors in determining the appropriate sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the

Having calculated the Guidelines range as 600 months to be followed by a lifetime term of supervised release, the Court's reasoning must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a). *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). The recommended sentence also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Those considerations reflect "the 'just deserts' concept, which carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (en banc). The requirement is "not merely that a sentencing court . . . be stingy enough to avoid [a sentence] that is too long, but also that it be generous enough to avoid one that is too short." *Irey*, 612 F.3d at 1167.

The Fifth Circuit has recognized that sex offenders have a high rate of recidivism. *See United States v. Allison*, 447 F.3d 402, 405-406 (5th Cir. 2006) (Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders). In determining what sentence to impose, one of the § 3553 factors to consider is to protect the public from further crimes of the defendant. A sentence of 50 years followed by a lifetime term of supervised release would "afford adequate deterrence to criminal conduct" and would "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)-(C). The defendant knowingly and repeatedly sexually assaulted this little girl for years. He recorded these worst moments of her life and then shared them with others who receive sexual gratification from the

---

sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the Sentencing Guidelines; (5) any pertinent Guidelines policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1).

sexual abuse of children.  And he voluntarily shared these videos with others, for years, using various online platforms to merely acquire new and different child sexual abuse material.  A sentence of 50 years imprisonment followed by a lifetime term of supervised release is within the Guidelines range, and therefore reflects the kinds of sentences and the sentencing range established by the Sentencing Commission in its Guidelines and policy statements. See 18 U.S.C. § 3553(a)(3)-(5).

A guideline sentence of 50 years followed by a lifetime term of supervised release is appropriate and would avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(6). The life term recommendation of supervised release contained in Section 5D1.2(b) reflects powerful evidence indicating that recidivism rates for sex offenders do not appreciably decline as offenders age. See H.R. Rep. No. 107-527, at 2 (2002) (discussing the merits of a life term of supervised release for sexual offenders). Because, in sex crimes cases, there is no reason to believe that the need for supervision inherently decreases with time, Congress found lifetime supervised release to be appropriate and directly inserted such a recommendation into the Guidelines. *Id*. More specifically, passage of 18 U.S.C. § 3583(k) recognized the long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison. Many of these offenders need long term or lifetime monitoring and oversight. H.R. CONF. REP. NO. 108-66, at 49-50 (2003), reprinted in 2003 U.S.C.C.A.N. 683, 684.

Federal District Judge John R. Adams, in *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), used a quote attributed to Nelson Mandela: "There can be no keener

revelation of a society's soul than the way in which it treats its children." *Id.* at 847.   He

continued, "Given the recent statistics surrounding child pornography, we are living in a country

that is losing its soul." *Id.*    Any sentence below the advisory guideline range in this case,

ignores the public's repulsion and horror at the thought of someone using an innocent child to

fulfill one's own warped sexual desires. It ignores the atrocity, and lifelong harm to the victims

of sexual abuse whose images are traded like baseball cards. These are crimes of violence and

should be treated as such.

## CONCLUSION

When the Court considers all the factors enumerated in 18 U.S.C. § 3553(a), the Guidelines

and Guidelines Policy Statements, a Guidelines sentence of 50 years imprisonment followed by a

lifetime term of supervised release is the reasonable and appropriate sentence. Such a sentence

generally deters the behavior exemplified by the defendant, imposes a reasonable sentence given

the defendant's criminal conduct, imposes a sentence that will promote respect for the law,

considers the kinds of sentences available and the sentencing range established by the Guidelines,

will protect the public from further crimes of the defendant, and avoids unwarranted sentencing

disparities among similarly situated defendants.

Respectfully submitted,

JAIME ESPARZA
United States Attorney

By:  _____/s/_____

TRACY THOMPSON
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I, Tracy Thompson hereby certify that on the 3rd day of June 2024, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system which will send notification

8

of such filing to the following:

*Marina Douenat*
*attorney for defendant Demetrio Ramirez*

_____/s/_____

TRACY THOMPSON
Assistant United States Attorney
